**NATHAN H. CROFT v. HUGH CULBREATH,** Sheriff of Hillsborough County, Florida.

6 So. (2nd) 638                                En Banc

March 3, 1942      Petition for Rehearing Denied May 4, 1942

C. J. Hardee and Edwin R. Dickenson, for petitioner.

J. Tom Watson, Attorney General, Millard B. Conklin, Assistant Attorney General, Woodrow M. Melvin, Special Assistant Attorney General, and J. Rex Farrior, State Attorney, for respondent.

ADAMS, J.:

On original habeas corpus proceedings we review an order holding petitioner in contempt.

One Basarte appeared before a circuit judge in Hillsborough County and swore in substance that petitioner procured him, Basarte, to give perjured testimony in a civil action recently tried before the same circuit judge. At the time of the alleged wrongful act, Basarte had not been summoned in the case as a witness and the parties were not in the presence or near the court or judge. Upon such testimony the circuit judge issued a rule against petitioner. Petitioner filed a general denial under oath and moved for a discharge of the rule. The motion was denied. Testimony was taken. Upon conflicting evidence petitioner was convicted.

Three questions are presented. First, was there a proper showing made to base the issuance of the rule? Second, did the traverse under oath entitle petitioner to discharge? Third, was the evidence sufficient?

We are dealing here with an alleged indirect, criminal contempt. In such cases the rule should be predicated on affidavit of some person having actual knowledge of the facts. Ex Parte Biggers, 85 Fla. 322, 95 So. 763.

Our conclusion is that this requirement was met. The circuit judge had before him the oral sworn testimony of the witness who is said to have been induced to swear falsely. The law does not contemplate that his testimony must be reduced to writing and filed. The gist of his testimony was recited in the rule and in that way petitioner was duly informed of the cause of complaint. The rule was therefore properly issued.

The second question has been before this Court several times. As will presently be observed the position of this Court has been inharmonious:

"At common law, in cases of indirect or constructive contempts, the sworn answer of the alleged contemnor fully denying the charge is conclusive and entitles him to a discharge. This rule, however, is not followed, or is followed only subject to qualification, by many modern authorities." 17 C.J.S. 107.

This rule was followed by the Court in Ex Parte Earman, 85 Fla. 297, 95 So. 755, which held:

". . . The adjudication of imprisonment as for a criminal contempt after the denial under oath of the charges as made was not authorized by the rules of the common law. This makes the detention illegal and

a discharge from imprisonment may be had on habeas corpus."

. The Court cited 4 Blackstone's Com. 287; In re Verdon, 89 N.J.L. 16, 97 Atl. 783. State v. Earl, 41 Ind. 464; In re Walker, 82 N.C. 95; Underwood's Case, 2 Humph. (Tenn.) 46.

"In the Biggers case, supra, this Court stated:

"The general common law of England is in force in this State except where it is "inconsistent with the Constitution and laws of the United States and the Acts of the legislature of this State." Sec. 71 Rev. Gen. Stats. 1920.

"There are no statutes regulating the procedure in contempt cases in this State."

We now consider some later cases before this Court. In Baumgartner v. Joughin, 105 Fla. 335, 141 So. 185, this Court held:

"Cases of tampering, or attempting to tamper, with jurors by approaching them, as charged in the case at bar, are not within the rule requiring discharge from custody upon denial under oath of an attempt to offend, since the offense, if any, is not one which affects the outward dignity of the court nor the judges in their persons, nor is the intent of the perpetrator the sole element by which the contemptuous nature of what was done is to be determined. If the presence and the overt acts of the alleged contempt are proved or admitted, the offender may be presumed to have intended the ordinary consequences to be implied from his own deliberate act in addressing the juror, or prospective juror, as he did, under circumstances fully known to him, whereby he committed a flagrant breach of propriety; and interfered with the orderly administration of justice. And in such cases

the outward facts and the inferences to be drawn therefrom should be ascertained from the testimony in the usual way, under the modern practice now generally approved in such cases."

Wilson v. Joughin, 105 Fla. 345, 141 So. 178, was a similar case in fact to the Baumgartner case. In the latter cases, this Court declined to hold that petitioner was entitled to a discharge on his sworn return because he merely denied the intent to corrupt. If the overt act be admitted the offender is presumed to have intended the natural consequences of his act. For the return under oath to operate as a discharge it must be direct, specific, full and unequivocal. The failure to deny any material act will render it ineffectual. So it appears that the rule is yet as announced in In re Biggers and In re Earman, supra. While there appeared a conflict in the earlier and later cases, the court expressly held there was none. The fact that it is a common law rule, is self evident that it is based on reason and logic. On first impression, it may appear as an unfair rule to allow so great an offender and one so vitally interested to exonerate himself by his own oath. In fact he does not exonerate himself. He merely shifts the forum of the tribunal and the nature of his offense. He who swears falsely to procure a discharge of the rule does so advisedly that he subjects himself to a prosecution for perjury. If the charge be true in this case, he also subjects himself to further prosecution under Section 5343—5, R.G.S. The critics of this rule say there is delay and doubt of conviction of perjury. Such argument necessarily falls of its own weakness. All are presumed innocent before the law. We undermine our own liberty when we relax the legal requirements

to easily obtain conviction. We are without judicial propriety when we grow impatient of the necessary delay of trial by jury.

What has been said here refers only to criminal indirect contempt. For definition see In re Earman, supra. This is not an offense against the outward dignity of the Court of the Judge.

All good citizens are of one accord, that the courts must function without improper influence and free of perjured testimony. Of equal importance is the right of the citizen too. Unless the two share equal protection of the law both will fall in jeopardy.

Having reached this conclusion it is unnecessary to discuss the third question.

The petitioner is discharged.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD and CHAPMAN, JJ., concur.

THOMAS, J., agrees to conclusion.