PER CURIAM.
The following opinion and judgment by MATHEWS, C. J., prepared prior to his death on April 30th, is hereby adopted by the present Justices of the Court as the opinion and judgment of this Court.
*686 MATHEWS, Chief Justice..
This is an original proceeding in habeas corpus to review a commitment for contempt in the Circuit Court of Suwannee County, Florida. The respondent, the Sheriff of Suwannee County, has filed his return to the writ issued by this- Court and the case has been fully briefed and argued.
It is important to determine here, whether or not the information charged facts and an intent which tended or were calculated as a matter of law to have an actual and direct obstruction of or interference with the administration of justice, or a clear and present danger to the administration of justice; to hinder and embarrass the Court in its legal and lawful operation. It is not material whether or not the information alleges that the contem-nor’s conduct actually had such effect or that he was successful in his purpose or efforts.
There was no communication with the Judge of the Court but there was a communication with an agent of the Court whose duty it was after examination, study and investigation to give his testimony ■before and to the Court concerning his opinion as to the sanity of the accused (Ruby McCollum) and it is apparent and obvious that the purpose and intent of the communication with this agent of the Court was to influence his opinion, which he in turn was to testify about to and before the Court, and thus obstruct or interfere with the administration of justice and bring about a clear and present danger to the administration of justice, and hinder and embarrass the Court in its legal and lawful operation.
Every question presented ■ in this collateral attack upon the proceedings and final judgment of the Circuit Court has been settled by this Court in the case of Sloan v. Brown, 114 Fla. 739, 154 So. 514, and F.S. Section 38.22, F.S.A., hereinafter mentioned.
The petition for the writ and all pleadings and briefs by the petitioner show that his conduct and contentions in this case are that he is relying mostly upon a misconception and misinterpretation of the opinion of the Supreme Court of the United States in the case of Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 1037, 90 L.Ed. 1295. The opinion in that case was based upon a finding or holding that the alleged contempt was with reference to a case which had been disposed of, and not with reference to a pending case then before the Court. The McCollum case was a pending case, on the docket to be tried. After discussing this matter, the Supreme Court of the United States said:
“ * * * It does not follow that public comment of every character upon pending trials or legal proceedings may be as free as a similar comment after complete disposal of the litigation. Between the extremes there are areas of discussion which an understanding writer will appraise in the light of the effect on himself and on the public of creating a clear and present danger to the fair and orderly judicial administration. Courts must have power to protect the interests of prisoners and litigants before them from unseemly efforts to pervert judicial action. * * * ”
The Pennekamp case as misconstrued and misinterpreted has been adopted by some as the beacon light and Bible, shield and protector, of those who would destroy public confidence in judicial processes and eventually in the courts themselves. Even the Pennekamp case recognizes that there is no such thing as absolute freedom of speech and the press. In that case such freedom was restricted and limited so that “Courts must have power to protect the interests of prisoners and litigants before them from unseemly efforts to pervert judicial action.” Absolute power in government would lead to despotism or tyranny and absolute freedom of speech and the press or any other absolute freedom would lead to chaos and anarchy. Limitations and restrictions upon the right of speech and the press are just as essential as are the limitations upon power in government.
*687 Ruby McCollum had been indicted for murder in the first degree of a Dr. Adams in Live Oak, Florida. She had been tried and convicted by a jury and without a recommendation for mercy. On appeal to this Court the case was reversed for a new trial. McCollum v. State, Fla.1954, 74 So.2d 74.
After the case was reversed and the mandate of this Court was returned to the Circuit Court, the case of State of Florida v. Ruby McCollum then came on for hearing before the Honorable Hal W. Adams, Circuit Judge of the Third Judicial Circuit of Florida, on the 30th day of August, 1954. On that day a petition was filed by counsel for the defendant entitled “Petition for the Court to Determine Mental Condition of the Defendant”. The State Attorney also moved the Court to appoint two qualified experts as required by law for the purpose of inquiring into the sanity of the defendant. He moved that the two experts be appointed to make an examination. Thereupon the Court named and appointed Dr. William H. McCullagh of Jacksonville, and Dr. Frank A. Fernay of Lake City, Florida, to examine the defendant as to her sanity and to file a report of their findings in writing with the Clerk of the Court within twenty days, and “to be present before the Court on September 24, 1954, at 10: o’clock A.M. in the Courthouse in Live Oak, Florida, then and there to give such further testimony in addition to their report as may be deemed to be necessary, either by the State Attorney or counsel for the defendant”.
The petitioner was present in Court when all of these proceedings were had and appointments made and the record discloses that he knew what proceedings were taking place, and was present and knew when the above order was made and entered. It further appears from the Minutes of the Court, about which there is no dispute, that after the above order was made, the Court set the hearing upon the agreement of the parties; that is, the State and the attorneys for the defendant, for September 24, 1954, and then made the following entry: “There being no further business to come before the Court at this time the Court took a recess until the 24th, day of September, or until further order of the Court.”
Immediately after the Court took recess, the petitioner in this case went directly to Lake City in search of Dr. Fernay and found him fishing on the banks of a lake at the rear of Dr. Fernay’s home. The information on which the rule nisi was based contained the following:
“That on the 30th day of August A. D. 1954 the said William Bradford Huie did approach the said Doctor Frank A. Fernay, the said William Bradford Huie, knowing at the time that he approached the said Frank A. Fernay, that the said Frank A. Fernay, had been appointed by the Honorable Hal W. Adams, Circuit Judge, aforesaid, to examine the said Ruby Mc-Collum to determine if she was sane or insane, and that the said William Bradford Huie, at said time he approached the said Frank A. Fernay, knew that there was pending in the Circuit Court of the Third Judicial Circuit of Florida, in and for Suwannee County, Florida, the case of the State of Florida v. Ruby McCollum, That the said William Bradford Huie did approach the said Frank A. Fernay with intent and did bring this Court, that is the Honorable Hal W. Adams and the Circuit Court of the Third Judicial Circuit of Florida in and for Suwannee County, Florida into disrepute spoke of and concerning the Honorable Hal W. Adams, Circuit Judge aforesaid, and represented and pretended to the said Doctor Frank A. Fernay, that the said Ruby McCollum was insane and that the said William Bradford Huie did discuss and talk with the said Doctor Frank A. Ferney the case of the State of Florida v. Ruby McCollum and the said William Bradford Huie, did represent to the said Doctor Frank A. Fernay that the said Hal W. Adams, circuit Judge aforesaid, was prejudice [d] and against'the said Ruby McCollum and that the said Hal W. Adams was bias[ed] in the matter of the State of Florida v. Ruby *688 McCollum and that the said Hal W. Adams, Circuit Judge aforesaid and the said A. K. Black, former State Attorney of the Third Judicial Circuit of Florida together with Doctor C. LeRoy Adams, deceased, was interested in and had a financial interest in a Lottery or Bolita Operations and that the Husband of the said Ruby McCollum was in partners [hip] with the said Dr. C. LeRoy Adams, Former State Attorney A. K. Black and Circuit Judge Hal W. Adams in the lottery gambling and bolita racket, and that it was the desire of the said Former State Attorney A. K. Black and Circuit Judge Hal W. Adams to see that the said Ruby Mc-Collum was executed in order that the' said Ruby McCollum could not tell on and give information against the said Former State Attorney A. K. Black and the Circuit Judge Hal W. Adams, and expose them in their Gambling Lottery and Bolita Operations and their interest in the same.
“That the said William Bradford Huie did tell the said Doctor Frank A. Fernay that he the said William Bradford Huie did have a[n] interest in the said case of the State of Florida v. Ruby McCollum and that he the said William Bradford Fluie was of the opinion and belief that the said Rrtby McCollum was insane, that the said Doctor Frank A. Fernay, as one of the Doctors appointed by the Court to examine the said Ruby McCollum, did not ask, invite or summons the said William Bradford Huie to appear before him the said Doctor Frank A. Fer-nay and give testimony with reference to the question of the sanity of the said Ruby McCollum and that said actions on the part of the said William Bradford Huie was willful on his part and with the intent to influence the said Doctor Frank A. Fernay in his duties as assigned to him by the Court.
“That such conduct as hereinset forth on the part of the said William Bradford Huie, was wilful and contemptuous and tended to bring this Court into disrepute and tended to hold the said Court and the Judge thereof up to public ridicule and tended to obstruct justice and the orderly conduct of said Court and to hinder and embarrass said court in its legal and lawful operation.”
The rule nisi was issued and after the disposition of the motion to quash filed by the respondent, defenses were filed by the respondent to the rule nisi. In the defenses filed by the. respondent he admitted that he approached Dr. Fernay but denies that it was with the intent to bring the Court into disrepute and denies that he stated categorically that Ruby McCollum was insane. He denies that he stated that Hal W. Adams was biased and prejudiced but admits that he did state to Dr. Fernay that it was his opinion that Hal W. Adams was biased and prejudiced. He denies that he stated that Judge Hal W. Adams was interested in the bolita racket and that Judge Adams and A. K. Black wished to have Ruby McCollum executed so that their gambling operations would not be exposed. The petitioner strongly urges that because of his denial of these particular allegations, he is entitled to be discharged.
In his answer the petitioner admitted the charges, except those above set forth, and that he was of the opinion that Ruby Mc-Collum was insane, that Dr. Fernay was one of the doctors appointed by the Court and that Dr. Fernay did not invite or summons him before him to give any testimony with reference to the question of the sanity of Ruby McCollum or any other questions. He concludes his defenses with the assertion that he was acting under the advice of counsel for Ruby McCollum and that his purpose was to assist Dr. Fernay in his investigation into the sanity of Ruby Mc-Collum and that it was in good faith.
The contempt proceedings lasted all day on October 9, 1954. The two principal witnesses were the petitioner, William Bradford Huie, and Dr. Fernay. It is desirable to recite some of the testimony of the petL tioner. His testimony alone was more than sufficient to convict him of contempt. He *689 could eliminate entirely the dispute in the testimony between the petitioner and Dr. Fernay as to what the petitioner said concerning the Honorable Hal W. Adams having an interest in the bolita racket and the balance of his testimony was sufficient to convict him of contempt. Dr. Fernay testified that he was a neuro-psychiatrist and attending consultant at the Veterans Hospital in Lake City. He said he was contacted by telephone and asked if he could serve as an examining physician in the case of State of Florida v. Ruby McCollum. He consented to serve and was later informed that he had been appointed. During the afternoon of that day while fishing near his home, the petitioner in this case approached him. Dr. Fernay testified that he did not invite, summons or ask the petitioner to appear before him to give him any information. The conversation lasted about a half hour and the petitioner represented himself to be a writer and author and as such interested in the case of Ruby McCollum because he was writing a book about her and Dr. Adams. He then went into a lengthy discussion telling the Dr. (Fernay) of his experiences in different places and of books and articles he had written. He offered some of his books to the Dr. which were refused.
Dr. Fernay further testified that petitioner then went into great detail about his experiences in attempting to get permission to see Ruby McCollum in the County Jail to get information from her to go in his book. Huie v. Lewis, Fla., 71 So.2d 498. He discussed with the doctor all the hearsay evidence he had been able to gather concerning Dr. Adams and his immoral and illegal activities as well as the activities of Ruby McCollum and her husband, and the intimate relations between Ruby McCollum and Dr. Adams.
Dr. Fernay testified positively that the petitioner told him that Dr. Adams, Judge Adams and A. K. Black were financially interested in the bolita racket and the Judge couldn’t give a fair verdict because Ruby McCollum might talk. He attempted to impress upon the doctor that it was to the, interest of Judge Adams that Ruby McCol-lum be sentenced so that she wouldn’t talk. Fie stated that he “had data to prove all the charges he was making”. After all this recitation the petitioner told Dr. Fernay that he was in court and heard the Court announce his appointment to examine Ruby McCollum and that in the petitioner’s mind, or opinion, Ruby McCollum was insane. One of the things which the petitioner had heard which convinced him she was insane was that she took the mattress from the bed and laid on the springs. He did not see this but had heard it. Dr. Fernay further testified that the substance of what the petitioner had said was that Ruby McCollum would tell on Judge Adams and Mr. Black and that was why Judge Adams and Mr. Black wanted her done away with.
Dr. Fernay testified that nothing said by the petitioner influenced him except that it made him somewhat irritated that the petitioner would accuse' Mr. Black and Judge Adams of the things he did accuse them of. He further testified that the petitioner made the statement more than once during that short conversation that Mr. Black and Judge Adams were in the bolita game and that he, the petitioner, could produce the evidence.
Petitioner took the stand in his own behalf and admitted, or corroborated, most of the material testimony of Dr. Fernay. The main dispute between them was what was said to the doctor by the petitioner concerning Judge Hal W. Adams’ interest in the bolita racket and whether the petitioner said that Judge Adams was prejudiced or that in the opinion of the petitioner Judge Adams was prejudiced. The testimony of Dr. Fernay and petitioner show that most of what was said by the petitioner to Dr. Fernay was not with reference to the sanity or insanity of Ruby McCollum but was with reference to his own activities and his interest in Ruby McCollum because he was writing a book, his failure to get in the jail where he could interview Ruby McCollum about her life and that of her husband and her relations with Dr. Adams and the repetition to Dr. Fernay of all of the incompetent hearsay he, had been able to gather over weeks and months of investigation *690 concerning the immoralities and dishonesty of Dr. Adams. There can be no question that the admitted and undisputed portions of the conversation by petitioner with Dr. Fernay were for the purpose of influencing Dr. Fernay in this case. The petitioner can gain no advantage because he was unsuccessful in carrying out his intent. His denial of intent and assertion of good faith in the face of this record can avail him nothing.
Petitioner insists that because he denied a portion of the alleged conversation under oath he is entitled to be discharged. This contention is in connection with his further contention that the charges against him concerned an indirect contempt. It is unnecessary to discuss or distinguish the cases cited on this question. Whatever may have been the common law rule, it is now superseded by F.S.Section 38.22, F.S.A. This section, as amended, reads as follows:
“38.22 Power to punish. — Every court may punish contempts against it, whether such contempts be direct, indirect, or constructive, and in any such proceeding the 'court shall proceed to hear and determine all questions of law and fact, but the punishment imposed by a justice of the peace shall not exceed twenty dollars fine, or twenty-four hours' imprisonment.”
The amendment to the original statute added the following words:
“whether such contempts be direct, indirect, or constructive, and in any such proceeding the court shall proceed to hear and determine all questions of law and fact”.
The power to hear and determine all questions of law and fact in the court was broad and general. The witnesses appeared before the judge in this case and he was the sole judge of their credibility. Where there was conflict in the testimony of Dr. Fernay and petitioner the judge simply did not believe the petitioner and the record in this case fully justifies the findings of the trial judge on this question and it will not be disturbed in this collateral proceeding.
It is contended by the petitioner that the order appointing Dr. Fernay was void in the first place, and if it was not void, that it was voided by the subsequent action of the trial judge by appointing someone else to serve in the place of Dr. Fernay because of his inability to serve. Petitioner apparently contends that only a person licensed to practice by the State of Florida in the State of Florida is qualified to serve. The law with reference to this matter is covered by F.S.Section 917.01, F.S.A., which contains the following:
“ * * * The court may appoint two disinterested qualified experts to examine the defendant and to testify at the hearing as to his mental condition. Other evidence regarding the defendant’s mental condition may be introduced at the hearing ;by either party.”
The only requirement is that there be appointed “two disinterested qualified experts”. There is not one word in this statute or any other statute which requires that the disinterested qualified experts be licensed by the State of Florida to practice in the State of Florida. The records in this court are full of cases where disinterested experts throughout the United States have been called in and appointed in such cases as this and who were not licensed by the state to practice in this state. At the suggestion of the attorneys for the defendant, the Court provided that “any medical expert, neurologist, or psychiatrist, who has been duly admitted to practice his profession in this State and who is duly licensed to practice such profession in this State, under the laws of Florida, whom the defendant may desire to have visit her for the purpose of making examination as to her sanity, shall be admitted to the County Jail for such purpose”. It should be noted that a wide latitude was given to the defendant and the persons who may be called by the defendant were not even named. This portion of the order has absolutely nothing to do with the direct appointment by the Court of Dr. Fernay as provided for by statute. It makes no difference whether Dr. Fernay served and made a report or not. The ques *691 tion now before us is what did the petitioner do or say that made him guilty of contempt?
When the petitioner had this conversation with Dr. Fernay the doctor had just been appointed pursuant to law as an agent of the Court. He was appointed for the purpose of making his own investigation and examination of Ruby McCollum and to testify before the Court at the hearing set by the Court as to her mental condition. At the time of the interview so far as the petitioner knew, Dr. Fernay would perform this duty and testify before the Court as to his opinion concerning that mental condition. The fact that the doctor did not testify could and did have no effect upon what the petitioner said or did on that occasion or what his intent was.
 It is further insisted by the petitioner that the contempt judgment was void because the Circuit Court was without jurisdiction at the time the words were uttered when the Court was in vacation. There is not one word in this record to show or indicate that the Court was in vacation. The record shows that the Court was called and convened for the very purpose of hearing the case of State of Florida v. Ruby McCollum, the defendant being charged with first degree murder. The question of her sanity or insanity was suggested first by the attorneys for the defendant and then by the State. When Court convened on the morning in question, the Minutes show: “Court being in recess was reconvened upon order of the Court on the above date at 10:00 A.M., in the Court House in Live Oak, Florida”. The “above date” is set forth as August 30th, 1954. At the conclusion of the proceedings on that day the Minutes stated: “There being no further business to come 'before the Court at this time the Court took a recess until the 24th., day of September, or until further order of the Court.” It, therefore, appears that a term of Court was in progress on August 30th, 1954, and that on that date it convened and tiren recessed until a day certain. The Court was in session and a term was in existence at the time of the conversation between Dr. Fernay and petitioner. Vacation has reference to the time between the end of one term of court and the beginning of another. Ex parte Earman, 85 Fla. 297, 95 So. 755, 31 A.L.R. 1226. The contention that the Court was in vacation at the time of the alleged contempt is without merit.
Even if it could be said that the Court was in vacation, such fact would not prevent a contempt conviction to punish the petitioner for an improper approach and attempt to influence Dr. Fernay as shown by this record.
Dr.. Fernay was not the court itself but he was the agent or the instrumentality provided by law and adopted by the Court in the administration of justice. The actual conduct of the petitioner immediately imperiled the due administration of justice by attempting to influence the very agent or instrumentality designated by law and selected by the Court to give an opinion upon the sanity of the woman who was to be tried for her life. It was for the Court to decide whether the acts of the petitioner fell within the realm of constructive criticism which the constitutional guarantee was designed to protect or whether the actions of the petitioner hád no other purpose than to interfere with or influence or affect the administration of justice in a pending case. In this case a decision was yet to be made to determine the sanity of the accused and whether or not she should be on trial for her life. It was a pending case.
The findings and conclusions of the Circuit Judge were fully sustained by the evidence. In finding the petitioner guilty and in passing sentence, the Circuit Judge stated:
“Stripped of all the technicalities that have been urged here today, the cold facts remain, and it is obvious to the Court and everybody else that you were deeply and actively interested in the case of the State of Florida against Ruby McCollum. That of itself would not have been any violation of the proprieties. But you carried it farther. You attended Court as regularly as Ruby’s lawyers did, and when the Court granted a motion by Mr. Cannon, *692 of counsel for the defendant, to appoint a committee to examine into the sanity of Ruby McCollum you were here. You left this Court and practically went straight from this Court to the home of Dr. Fernay, whom the Court had appointed as one of its agents, not as a witness, but as an agent of this Court to examine into the sanity of Ruby McCollum and to render their verdict on her sanity or insanity, which would form at least a part of the foundation upon which the Court would found its judgment upon the involved question. You went almost directly from the courtroom straight to Dr. Fernay, not to Dr. Fernay as an individual or as just a man; you went to him because he had been appointed as an agent of this Court to examine Ruby McCollum, in whose case you were most actively interested.
“And what took place after you go to the doctor’s? He didn’t invite you to come; he didn’t ask you to come. He felt offended after you got started, that you had come, but out of a high degree of courtesy he maintained his calm attitude while you poured forth a regular sluice of charges against a man, Dr. C. Leroy Adams, who is dead and who cannot be here to defend himself. * * * And you were, Mr. Huie, without any invitation trespassing upon Dr. Fernay as an agent of this Court, picturizing a man who was dead, but who was a party to the case of the State of Florida against Ruby McCollum as much as if he had been alive,, and much more so, because if he had been alive the case would not have been pending. And you picturized that man, about whose killing Ruby McCollum was under indictment as a dissolute, disreputable, reprehensible, dishonorable, unprincipled law violator, liar and general renegade. Now, there could have been no other idea, it is just not reasonable, that you would have poured out that tirade to Dr. Fernay against this dead man, unless it was in the spirit of making Dr. Adams so distasteful to Dr. Fernay that he might decide ‘Well, this woman should not have to suffer any for killing him. The world is better off without him, and it might be all right to send her to the asylum’.
“But you calculated without considering what kind of man Dr. Fernay was. I have known Dr. Fernay a long time. He is a high class honorable gentleman. He had no interest in the case; he told you he didn’t; but that didn’t stop you. He even told you what you were saying wouldn’t have any influence on him; that didn’t stop you. You just continued to pour out a mess of filth and stuff against a man who was dead, helpless to defend himself, but a man who was the principle character in the case in which you were so much interested.
“Now, if that didn’t constitute contempt of Court under our rules and the law, just that part of it alone, then we might as well do away with the laws and rules about contempt, and leave the Courts open to all such outrageous assaults by anybody that wants to hereafter and in the future. But you didn’t stop there. Dr. Fernay says that you told him or made the claim that you were trying to help the doctor. But what any of this about what you told him about Dr, Adams — how that could help on the question of the sanity or insanity of Ruby McCollum is beyond my understanding. * * *
"That is a pretty tough charge, Mr. Huie. You say 'you didn’t say that. Dr. Fernay is positive you did. In my humble judgment your own testimony here this afternoon convicts you of that, regardless of your denial, because a man who would go to a perfect stranger that he had never seen before and didn’t know, and pour out a tirade like you admitted here today on the stand that you poured out there in the face of Dr. Fernay, it could well be expected he would also charge anybody else with disgraceful and unlawful conduct if he thought it would serve his *693 purpose to do so. So, I think certainly that anybody who sat and listened to you this afternoon, your own testimony convicts you of a most brazen contempt of court in an attempt to influence an agent of this Court who had been appointed to perform a most vitally important duty.
“ * * * the Court appointed two physicians to make the examination, and immediately after that you, a man unquestionably interested in the outcome of the case, drives at once to the home of one of those gentlemen who had been appointed to examine this woman’s sanity, and there poured out that tirade that came to light here in this courtroom this afternoon. I say again if that kind of conduct is not contempt of court, and doesn’t tend to hinder and impede and obstruct justice and to bring the courts into disrepute and disrespect of the public and weakens the dignity and strength of the court before the public, why I don’t know of any conduct hardly that would or could do it, if that doesn’t do it. When the public loses confidence in the honesty of their judicial officers and confidence in the integrity of their courts as a bulwark to every man, high or low, rich or poor, regardless of his standing, to the protection of his rights under the Constitution, when the Courts are torn down, then might will be right, the guilty and the powerful will take over the courts, and honest men will have to flee and justice will be a fugitive from the hearts of the people in which she ought to find a continual abiding place.” '
From our study of the record and the briefs in this case we can only reach one conclusion and that is that the petitioner had become so interested in this case that he attempted to exert an influence upon an agent of the Court appointed for a specific purpose, that such attempt was calculated and intended to have an actual and direct obstruction of or interference with the administration of justice, and it created a clear and present danger to the administration of justice. The information charged the necessary facts and an intent that the acts of the petitioner were intended to be an actual or direct obstruction to or interference with the administration of justice, or a clear and present danger to the administration of justice. Whether the con-temnors conduct actually had such effect ■ is immaterial.
It is the order of the Court that the writ of habeas corpus heretofore issued be and the same is hereby quashed, and. the petitioner be and he is hereby remanded to the custody of Hugh Lewis, Sheriff of Suwannee County, Florida.
DREW, C. J, and TERRELL, SE-BRING and BUFORD, JJ., and McNEILL, Associate Justice, concur.
THOMAS, J., agrees to conclusion only.