TERRELL, Justice
(dissenting).
This proceeding grew out of the following facts: While Roy J. Neering was consulting an attorney on other business, he was shown a list of prospective jurors and was asked if he knew anyone on the list. Neering replied that he knew one, Benoit, whom he thought would make a fair and impartial juror. Said lawyer then advised Neering that he had a case against Winn-Dixie in which he represented a woman who had broken her hip. Later, on his own volition, Neering called Benoit, whom he knew because each of them owned and operated a beauty parlor. Neering then made the following statement to Benoit:
“The reason I called you * * * is that I want you to do me a special favor. I have an attorney friend * * who has a case coming up Tuesday. It’s Brendel v. Winn-Dixie. You are on the jury list and there are a lot of insurance people and other undesirables that we don’t like. I can’t tell you any-' thing about the case, but would you be averse to giving the old gal a little something for her pain .and suffering, for her broken" hip and leg? * * * That’s fine.” (WITNESS’S VERSION)

OR

“If the facts warrant it, would you be averse to giving the old gal something for her pain and suffering?” (NEER-ING’S VERSION)
On the basis of the facts so detailed, Neering was indicted, tried and found guilty of criminal contempt. He was sen-" tenced to one year in j.ail. On appeal to the ■ district court of appeal the judgment of the circuit court was affirmed as to conviction (141 So.2d 615), but it was reversed- and remanded as to imposition of sentence.' The district court of appeal ordered that a new sentence be imposed not to exceed six months in the county jail. The district-court announced that it was doing so be-" cause, “Ther'e is no indication in the record that the defendant fully appreciated the possible relation of his conduct to the administration of justice.”
From the judgment so entered, we are confronted by three appeals by certiorari: (1) Neering v. State, Case No. 31,865; (2) State v. Neering, Case No. 31,909, and (3) State v. Neering, Case No. 31,959, all of which have been consolidated for treatment because they involve substantially the same questions.
1. In Neering v. State, Case No. 31,865, Neering raises two grounds in support of jurisdiction:
(a) Neering asserts the district court’s opinion implies that Neering did not “har-. bor any criminal intent” though it declined to reverse the conviction. Neering contends that this holding is in direct conflict with Marshall v. Clark, Fla.1950, 45 So.2d 667; Stokes v. Scott, 138 Fla. 235, 189 So. 272, and Florida Ventilated Awning Co. v. Dickson, Fla. 1953, 67 So.2d 218. In answer to Neering’s contention the state contends that there is no direct conflict on this *876 point because the cases cited are distinguishable and because the district court’s opinion did not find lack of criminal intent. A further reason is that in a criminal contempt proceeding, if an overt act is admitted, the offender is presumed to have intended the natural consequences thereof. Hence intent may not always be a required element. Croft v. Culbreath, Fla.1942, 150 Fla. 60, 6 So.2d 638.
(b) The second point of direct conflict raised by Neering is that the district court’s decision reducing the contempt sentence is in direct conflict with Geary v. State, Fla. App.1962, 139 So.2d 891, which holds that where the sentence is not illegal or excessive, an appellate court does not have the power to reduce it. The state in its brief takes two inconsistent positions in opposition to this point: (1) That Neering has no reason to complain since he benefitted by the reduced sentence, and (2) the state agrees that this portion of the decision of the district court of appeal is in direct conflict with Geary v. State, supra, and other cases commencing with Brown v. State, Fla.1943, 152 Fla. 853, 13 So.2d 458. In summary, as to Neering’s petition, the state agrees on point (b) that this court has jurisdiction and in fact bases its cross-petition and its independent petition for writ of certiorari on this point.
2. State v. Neering, Case No. 31,909. This is a cross-petition for writ of certio-rari by the state in which it alleges that the Supreme Court has direct conflict jurisdiction by virtue of the district court’s reduction of Neering’s sentence. The state contends such reduction conflicts with Geary v. State, supra, and two other cases.
3. State v. Neering, Case No. 31,959. Petition for writ of certiorari by the state alleging that the Supreme Court has jurisdiction on a direct conflict theory because the district court erroneously reduced Neer-ing’s sentence and that such reduction is in direct conflict with Geary v. State, supra, Brown v. State, supra, and other cases of the same tenor. Thus at one time or another, both the state and Neering take the position that this court clearly has jurisdiction by virtue of a direct conflict between district court’s decision reducing petitioner’s sentence and Brown v. State, supra, Geary v. State, supra, et cetera. Under prior decisions of this court, if we have jurisdiction on any ground, the entire case is before us for review. Tyus v. Apalachicola Northern Railroad Co., Fla.1961, 130 So.2d 590, and Zirin v. Charles Pfizer & Co., Fla.1961, 128 So.2d 594.
It thus appears that while Neering asserts other grounds of jurisdiction, both parties agree that we have jurisdiction on the direct conflict theory account of conflict between the opinion of the district court of appeal and Geary v. State, supra, Brown v. State, supra, and similar cases. We think any question of our jurisdiction is removed by that portion of the district court of appeal’s decision reducing Neering’s sentence from one year imprisonment to six months imprisonment. This on authority of the same cases herein cited.
The real question in the case has to do with reduction of the trial court’s penalty for contempt by the district court of appeal and the excessiveness of the penalty or failure of the court to equate the judgment for the alleged criminal contempt.
In any discussion of the subject of contempt one should not overlook the fact that contempts are generally classified as direct or indirect, sometimes referred to as constructive contempts. A direct contempt grows out of an act committed in the presence of the judge, while an indirect or constructive contempt arises from an act committed absent the presence of the court when sitting judicially. If committed in the absence of the judge, it must have been done under circumstances that reasonably tend to degrade the court, or to obstruct, interrupt, prevent or embarrass the administration of justice.
*877 Whether or not intent is essential to contempt depends on the circumstances of the case. Where the act charged points clearly to contempt, intent may be inferred from doing the act. Many cases hold that intent is essential to contempt. Some authorities contend that it is only where the act alleged to' be contemptuous is susceptible of two different interpretations that intent becomes an element. The fact that one charged with contempt did not intend to commit such an offense, may constitute a good defense to the charge, even though a technical contempt may have been committed. See Croft v. Culbreath, Fla. 1942, 150 Fla. 60, 6 So.2d 638, and Section 10, 6 Fla.Jur., for an enlightening discussion of this phase of contempt. This is a case in which we think intent must be proven.
As previously stated, the district court reversed the trial court only as to the punishment imposed which was one year in jail. The district court ordered that this be reduced to six months in jail on the theory that it was excessive. In Brown v. State, 152 Fla. 853, 13 So.2d 458, this court held that relief from an excessive sentence which did not violate statutory limitations was through the pardoning board. The Brown case has been reaffirmed in Walker v. State, Fla.1950, 44 So.2d 814; La Barbera v. State, Fla.1953, 63 So.2d 654; Emmett v. State, Fla. 1956, 89 So.2d 659; Hutley v. State, Fla.1957, 94 So.2d 815, and Sanford v. State, Fla. 1959, 110 So.2d 1. See also Chavigny v. State, Fla.App. 1959, 112 So.2d 910.
In State ex rel. Grebstein v. Lehman, 100 Fla. 481, 129 So. 818, this court held that the power of the courts to punish for contempt is, however, limited by our Bill of Rights, under which a court cannot impose ■“indefinite” or “cruel and unusual punishment.” Chief Judge Donald Carroll based the court’s opinion reducing the judgment on this court’s opinion in the Grebstein case. Judge Carroll also pointed out:
“The problem arising from the conflict between two vital considerations — the need to preserve the integrity of the court system and the ideal of tempering justice with mercy when an offense is unwittingly committed — is illustrated in the case of Geary v. State [Fla. App.1962], 139 So.2d 891, decided by the District Court of Appeal, Third District of Florida, * * *. In that case the defendant was found guilty of a charge of criminal contempt for discussing a cause in which he was a juror during the time that the court was in recess and against the admonition of the court.”
As to judgments for contempt, the Grebstein' case certainly had the effect of modifying Brown v. State, supra, and similar cases if the judgment of the trial court offended Section 8 of the Bill of Rights, Constitution of Florida, as we think it did.
As to the evidence in this case, we are limited to the findings of the district court of appeal as shown in the record before it, as well as its deductions therefrom. These show that Neering flatly denied that he had any interest in the case at bar and his evidence was not contradicted. Neering offered no inducement whatever to Benoit and the district court found the “evidence indicates that his [Neering’s] primary purpose was to be sure that he had not misled the lawyer in saying that he thought Benoit would make a ‘fair juror.’ ” The record shows that Neering knew nothing of court decorum or that he had any intent to interfere with the administration of justice; there is a complete absence of criminal intent. This court is committed to the doctrine that intent is a necessary element to convict one of criminal contempt in cases of this nature. This court is also committed to the doctrine that in a judgment of contempt based on improper proposals made to a member of a grand jury, the proposals must be proven in the same manner and to the same degree of certainty as other criminal charges.
In its opinion in this case the district court of appeal found that the “defendant *878 [Neering] had no interest in the outcome of the litigation.” Relying on the district court’s evaluation of the evidence, it is our view that it does not meet the test to convict prescribed in Stokes v. Scott, supra. We think this .evaluation is strengthened by the fact that Neering repeatedly denied that he had a purpose other than to make good on his suggestion or promise to his friend that Benoit would be a fair juror.
There was nothing in Neering’s conduct and deportment that points to criminal conduct. For years he is shown to have made his bread and butter as the proprietor and manager of a beauty parlor. It does not stand to reason that one who spends his waking hour making homely faces good to look at, thus adding to his country’s reservoir of pulchritude, would at the same time be concocting schemes that run counter to the administration of justice.
We think there was ample basis for the district court’s holding that the judgment was excessive and should not be allowed to stand.
In imposing sentence in this case the trial court appears to have overlooked the “vital consideration” referred to by Judge Donald Carroll in his discussion of this court’s opinion in the Grebstein case — “the ideal of tempering justice with mercy when an offense is unwittingly committed.” Mercy is a factor in the law that the confirmed legalist and others are prone to overlook in the administration of the criminal law; its function is to blend the law with discretion in such proportions as will save it from making a sham of justice. Justice is the sine qua non of every legal controversy. It is the handmaid of equity that was early designed to remove the harshness and delinquencies of the common law. It is not written in the books but like discretion resides in the breast of the judge and requires wisdom to appropriate it properly. There is no better test of a wise and skillful judge. The record in this case conclusively shows that such error as Neering may have committed was unwittingly done.
Informed judges and criminologists now tell us that the most effective and beneficial punishment is that which is equated with or has direct relation to the offense for which it is imposed. Honorable Roy W. Russell, Chairman of the Florida Probation and Parole Commission, pointed this out very effectively in an address to the Circuit Judges Conference in Jacksonville recently. Based on twenty-one years of research and experience by the Probation and Parole Commission, said Mr. Russell, they have abandoned the old “concept of criminal justice that demanded an eye-for-an-eye, and a tooth-for-a-tooth” and that when now confronted with the criminal offender the question that concerns them is, “How can this individual who has harmed society be punished but not destroyed as a useful member of the community?” As the result of their study and treatment of the question, Mr. Russell said, “I am convinced that some criminals brought before our courts have personalities so warped and bent toward crime that their rehabilitation seems beyond our ability. But I am equally convinced that, reached in time, the great majority of our fellow citizens convicted of crimes are capable of changing into law-abiding citizens.” In a second speech delivered to the Annual Southern Conference on Corrections, February 21, 1963, Mr. Russell points out that “nearly 90 per cent of those placed on probation with this Commission have made good,” and that “more than 80 per cent of those released on parole in these 21 years have not committed another penal offense.” Mr. Russell also' points out in this connection, that as to Florida and many other states, the record shows that as to those who have been.released after serving their sentence, 65 per cent of them return to prison for commit ting a second and often three or more crimes.
These figures certainly give us some light to equate judgments for criminal contempt. To commit one to jail for twelve months in face of the record here amounts to “cruel and unusual punishment.” It may be that *879 Neering wagged his tongue when he should have put brakes on it and kept his mouth shut. We do not condone his conduct; in fact, we agree that it deserves censure, but by the rule of proof announced in Stokes v. Scott, supra, he was not proven guilty of criminal contempt. In the Stokes case petitioner was sentenced to serve thirty days in the county jail and to pay a fine of $100. If he defaulted in payment of the fine, he was required to serve an additional thirty days in jail. In imposing the judgment, the court had the correct idea of equating it to the offense for which it was imposed. The court said:
“We are therefore convinced that the integrity of the trial court and the right of the petitioner will be best served by remanding the petitioner to the custody of the sheriff with directions to the trial court to discharge him unless evidence legally sufficient to support the charge is duly adduced.”
The imposition of a judgment for contempt is one of the most delicate duties a court is called on to perform. It is not fixed by statute but is controlled by mercy and discretion and the facts of the case. It should be corrective, not punitive, and it should be made clear that it is not imposed for committing a crime but for interfering with the essential and orderly processes of the law. It should be administered in such doses and in such a manner as will tend to rehabilitate instead of making a hardened criminal. To imprison one for twelve months or even six months for contempt who knew nothing of court decorum, who did not “appreciate the possible relation of his conduct to the administration of justice,” and for other reasons revealed by the record savors too strongly of “cruel and unusual punishment” condemned by Section 8 of the Declaration of Rights.
For the reasons so stated, Mr. Justice TERRELL, Mr. Chief Justice ROBERTS and Mr. Justice HOBSON dissent. We would grant certiorari, quash the judgment of the district court of appeal and order respondent Neering remanded to the custody of the trial court with directions to discharge him unless evidence legally sufficient to support the charge be adduced.