BOOTH, Judge,
dissenting:
The facts, as outlined by the majority, support the trial court’s ruling of indirect contempt based on appellants’ unlawful attempts to persuade one Carol Moore to change her testimony.[1] An important additional fact, not referred to in the majority opinion, is that Mrs. Moore was the notary on the affidavit which commenced the criminal prosecution for grand theft against appellant Martin’s wife. A motion to dismiss the charges against Martin’s wife, based on irregularities in the execution of the affidavit, had been filed and hearing set for the day following appellants’ interview with Mrs. Moore. Appellant Martin testified the evidence he sought to obtain from Mrs. Moore was “vital.” The record shows he used his friend Doyle and their official positions as law enforcement officers in an effort to make Mrs. Moore change her testimony.
At common law, and under the law of Florida, the court has inherent power to punish conduct which obstructs justice or interferes with the orderly processes of the court. The contempt power is not restricted to conduct which constitutes the felony offense of tampering with a witness,[2] nor is it limited to punishment for intimidation of individuals who have been officially called or designated as “witnesses.” [3] Were that the rule, the court would be powerless to punish the intimidation of potential witnesses. Fortunately, the power of the court is not so restricted.
The word “witness” derives from the Anglo-Saxon word “witan,” meaning “to know, to be wise,” and includes one by whom facts are sought to be proved, that is one who has knowledge of a fact or occurrence sufficient to testify in respect to it.[4] It is the act of attempting to intimidate, persuade, or coerce a witness which is inimical to our judicial system and punishable by the court as indirect criminal contempt. *1016 For this purpose, it matters not that the individual sought to be intimidated is mistakenly believed to be a witness.[5] Nor is it required that the testimony sought to be obtained was, or was believed by the con-temnor to be, true.[6] It is not necessary that the witness be actually intimidated, so long as the acts or threats exercised against the witness were reasonably calculated to achieve that result. Thus, it is no defense that appellants were mistaken in believing that the evidence sought to be extracted from the witness was “vital” and/or true. Advice of counsel, “assisting in investigation,” and “good faith” are not defenses, State ex rel. Huie v. Lewis, 80 So.2d 685, 688 (Fla.1955), though they may be considered by the court in mitigation. Of course, it is no defense that appellants were unsuccessful in making Mrs. Moore change her testimony.
The Miami interview took place after the first trial of appellant’s wife, which resulted in a mistrial, and before the second trial, which resulted in Mrs. Martin’s conviction of grand theft. Martin, a criminal investigator for the Escambia County Sheriff’s Department, and Doyle, his friend and a Deputy Sheriff from Leon County, drove to Miami, arriving Sunday morning at the home of Mr. and Mrs. Moore. Martin displayed his badge and credentials at the door and introduced Doyle as an investigator. Both Mr. and Mrs. Moore testified that they believed appellants were there on official business. Mrs. Moore had been the personal secretary of one Gilbert Nelson and, as such, had notarized Nelson’s affidavit of complaint charging Mrs. Martin with larceny by embezzlement of more than $30,000, property of an apartment complex managed by Mrs. Martin, of which Nelson was the court-appointed receiver. At the time of the Miami interview, Mrs. Moore had not been subpoenaed as a witness, though she was later subpoenaed for the second trial.
The Honorable M. C. Blanchard, Circuit Judge, who presided over Mrs. Martin’s criminal trial, issued rule to show cause why appellants should not be held in contempt. Another Circuit Judge, the Honorable Woodrow Melvin, who had no involvement in the criminal trials of Mrs. Martin, heard the evidence and observed the manner and demeanor of the witnesses who testified before him. Under Florida Statutes, Section 38.22, “all questions of law and fact” are to be determined by the trial court, a determination not to be set aside on appeal where reasonably supported by the record. Ward v. State, 354 So.2d 438 (Fla. 3d DCA 1978). The testimony of Mrs. Moore, essentially uncontradicted, was, in pertinent part, as follows:
A ... [Martin] said the following day, which was a Monday, they were going to court and if he could have a statement from me saying that it [affidavit] had been post dated that the judge had already said that he would throw the whole thing out of court.

A I told him that it had been notarized on that date and that I couldn’t tell him anything else, and then he continued with, “Well, everyone in Pensacola knows that it was notarized on the wrong date.” ... And, again I told him that I had notarized it on the right date, and that that was all I could tell him. And then he continued again about — Mr. Doyle told me that it was a third degree felony to notarize something incorrectly.

Mrs. Moore testified that appellants “continuously” said they wanted “a statement from you that you did not notarize this correctly.” Her further testimony was:
A ... I said, ... “If I need to give any information I’d rather give it in a deposition or as a witness than sit down and write it now and give it to you,” mostly because I was so scared. I don’t think could have written anything.

*1017 A ... He [Martin] said, “I will give you a statement saying that neither my wife nor I will press charges against you, and I’ll have her notarize it and give you that.”
Q Was this before or after Mr. Doyle had told you that falsely notarizing a document was a third degree felony?
A I really don’t remember which came first.

A When they finally realized that I wasn’t going to give them anything, and Mr. Doyle proceeded to tell me, he said, “Well, let me prepare you for what will happen. When it goes to court you will probably be called as a witness and it will all be brought out then because we can take that document plus something else that you’ve notarized and send it to our crime lab and they can verify to the hour of the date as to when it was notarized.” And, he said, “So, I am preparing you to expect this — that you will be called.”

Q Were you upset ?
A Terribly so. I was shaking horribly.

Q How did you feel about their visit ?
A I felt threatened. I felt that they came there to scare me into doing something.

A I was very upset. I was shaking and nervous. I had let them into my home thinking that this was a legal matter — that they were there on official business. That was how the whole conversation started and was aimed at, and when they continuously asked me for something I knew I couldn’t give them truthfully ... (emphasis supplied)
Mr. Moore testified, in part, as follows:
A ... But he [Doyle] said that if she would make a statement saying that she had, in fact, not notarized it correctly, that he would in turn give her a statement saying that neither he or his wife Sue would ever attempt to press charges or bring any charges against her, and he even' pointed out that because his wife was a notary that he would have her notarize that statement.
Well, at this point my wife has become very upset, and I don’t think she could have written any kind of a statement at this time whether she wanted to or not. She was very shaken.

Q Did either defendant lead you to believe that it was an official visit?
A Yes.
The foregoing testimony supports the ruling of the trial court, who set out the basis for his findings in the record at the conclusion of the hearing.[7] Appellants had already submitted the testimony of witnesses as to their respective good records as law enforcement officers; however, the court ruled, without objection by defense counsel, that further testimony in mitigation of sentences imposed would be heard and considered by the court if offered. The record reveals that appellants were accorded their rights in this regard and were fully advised of the basis of the trial court’s ruling.
The judgment below should not be reversed, and I, therefore, respectfully dissent.

.Petition for Order to Show Cause, in part: [Appellants] did unlawfully attempt to persuade and induce the said Carol Moore, a subscribing witness as a Notary Public in said Case Number 77-1828-B, Circuit Court in and for Escambia County, Florida, to make an admission to them that the Affidavit of Complaint executed by Gilbert Nelson and filed with the State Attorney’s Office in Case Number 77-1828-B in the Circuit Court in and for Escambia County, Florida, was not signed by Gilbert Nelson on the date shown on said Affidavit of Complaint and that said Affidavit was post-dated (which admission would be contrary to her recollection of the facts relating to said criminal proceedings and concerning the date of the signing and execution of said Affidavit and which admission would have been false) with the intent and purpose by the said [appellants] ... of using said admission or statement to have the said criminal case pending against Susan H. Martin dismissed from Court, thereby effecting the final outcome of said case.

. § 918.14, Fla.Stat.

. Croft v. Culbreath, 150 Fla. 60, 6 So.2d 638 (1942); State ex rel. Huie v. Lewis, 80 So.2d 685 (Fla.1955); see Shaw v. Shaw, 164 Eng. Rep. 1097 (E & A 1861), held contempt of court for threatening to file charges against a person likely to be a witness.

. Mellinkoff, Language of the Law, 47 (Little, Brown & Co. 1963); 97 C.J.S. Witness at 331.

. In re Hand, 89 N.J.Eq. 469, 105 A. 594 (1918).

. 17 C.J.S. Contempt § 31.

. Cause can be remanded for entry of order under Rule 3.840, Fla.R.Crim.P. McKnight v. State, 325 So.2d 79 (Fla. 4th DCA 1976).