321 So.2d 453 (1975)
Carl Allen McDONALD, Appellant,
v.
STATE of Florida, Appellee.
No. 75-197.
District Court of Appeal of Florida, Fourth District.
November 7, 1975.
*454 Richard L. Jorandby, Public Defender, and Elliott R. Brooks and Craig Barnard, Asst. Public Defenders, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Robert B. Breisblatt, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
Appellant was summarily adjudged guilty of fifteen separate acts of direct criminal contempt and sentenced to fifteen consecutive 178 day terms of incarceration in the county jail. He seeks review of those judgments and sentences, which resulted from the following circumstances.
Appellant and Roger Dean Hill were tried upon a charge of rape. The jury acquitted appellant, but the court granted a mistrial as to Hill. Just prior to Hill's next trial his counsel sought to depose appellant, but appellant refused to testify on Fifth Amendment grounds. The deposition was certified to the court, and though the trial judge directed him to answer the questions in the judge's presence, appellant steadfastly *455 refused, asserting fear of self-incrimination. The trial judge advised appellant that his acquittal on the rape charge precluded the state from trying him again and thus he had no right to refuse to testify about the circumstances of that crime. However, appellant was adamant and refused to testify. Thereupon, the state served appellant with an investigative subpoena returnable instanter and advised the court that it was thereby immunizing appellant pursuant to § 914.04, F.S. 1973. Several more questions were propounded to appellant by the state and by the court and appellant refused to answer them. The court then declared that appellant was in contempt and that sentence would be imposed later.
When the Hill trial commenced appellant was called as a court witness. Out of the presence of the jury the prosecutor propounded six questions to appellant concerning the subject matter of the case, and appellant invoked his constitutional right against self-incrimination. Once again the court took great pains to advise appellant that he could not refuse to testify on Fifth Amendment grounds because he was immune from prosecution for any participation in the alleged rape. Appellant persisted and after each refusal the court summarily found him guilty of a direct criminal contempt and sentenced him to 178 days in the Orange County jail. The jury was returned to the courtroom and in their presence the same or similar questions were propounded to appellant with the same result. Again the trial judge instructed appellant he must testify, again appellant refused, and again the judge, after each refusal, found him in direct criminal contempt and sentenced him to 178 days in the Orange County jail.
A written judgment and sentence was entered by the trial court adjudicating appellant guilty on fifteen counts of direct criminal contempt and sentencing him to 178 days in the Orange County jail on each count, to be served consecutively.
Appellant charges that error was committed by the trial court in (1) finding him in contempt for exercising his constitutional right against self-incrimination, (2) summarily adjudicating him guilty of contempt, (3) adjudicating him guilty of fifteen instances of contempt for successive refusals to respond to similar questions, (4) sentencing him to the equivalent of seven and one-half years in the county jail, (5) imposing more than one sentence upon him as each purported contempt arose out of the same transaction, (6) sentencing him to more than six months without a jury trial, (7) sentencing him to "hard labor" for contempt, (8) failing to follow the provisions of Rule 3.830, RCrP.
With regard to appellant's right to invoke the Fifth Amendment under the facts of this case, we find the trial court was correct in advising appellant that he was immune from prosecution and therefore could not with impunity refuse to testify on grounds of self-incrimination. Appellant's acquittal of the alleged rape involved in the Hill prosecution protected appellant from any further prosecution on the rape charge. In addition, the state through an investigative subpoena under § 914.04, F.S. 1973, immunized appellant from any other prosecution for past offenses which his coerced testimony might necessarily reveal. Appellant was advised of his immunity by the state and at length by the court. The fact that appellant testified in his own trial or that he had made a pretrial statement to the police did not give him grounds to fear a prosecution for any perjury that he might have committed in those past statements if the testimony he gave at Hill's trial was inconsistent with those earlier statements. See, e.g., United States v. Watkins, 505 F.2d 545 (7th Cir.1974). The immunization of appellant was complete as to any necessarily disclosed past act, including the giving of past statements or testimony. As pointed out in State ex rel. Hough v. Popper, Fla. 1973, 287 So.2d 282, an individual who gives coerced testimony pursuant to § 914.04, F.S. 1973, obtains *456 "transactional" and "use" immunity, thereby precluding the state from prosecuting the witness for the criminal transaction under consideration and from using that testimony in any other criminal proceeding against the witness. Therefore, since appellant had both transactional and use immunity, he was in no position to refuse to testify.
Of course, appellant could not invoke the Fifth Amendment to protect himself against a prosecution for perjury arising out of any untruthful statements he might make in answer to the questions being propounded to him in the Hill trial. Inherent in the power to compel the giving of testimony is the requirement that it be truthful. The immunity afforded by the statute relative to the past does not clothe the witness with a license to commit perjury in the future. Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911). Stated another way, a witness is not free to commit perjury under the protection of the immunity statute; the immunity does not extend to a perjury the witness commits while testifying under compulsion. Glickstein v. United States, supra; People v. Florentine, 276 App.Div. 730, 97 N.Y.S.2d 553; 8 Wigmore on Evidence, § 2282, pp. 511-512 (1961); Note, 7 University of Florida Law Review 194, 199-200.
Appellant relies upon Salem v. State, Fla.App. 1974, 305 So.2d 23, as authority for the propriety of his refusal to testify, particularly since Salem's fear of incrimination by perjury based upon prior testimony is very similar to the fear expressed by appellant. It is difficult to determine from the opinion whether the state granted Salem full immunity for testifying in the Hatten trial or not. In any event, if the state had granted Salem full immunity for testifying in the Hatten trial (as is indicated in Judge Pearson's dissenting opinion) we would agree with the dissent. On the other hand, if the majority opinion is based upon a finding that full immunity was not granted to Salem, then the conclusion reached was justified. We assume that to have been the finding of the majority since otherwise its reliance upon United States v. Wilcox, 450 F.2d 1131 (5th Cir.1973), was illfounded. The latter case makes it quite plain if a witness is granted statutory immunity in order to compel him to testify in a pending proceeding or investigation, he may not refuse to testify for the very reason that whatever has preceded the compelled testimony becomes inoperative as a result of the compulsion of the immunity statute and there can be no justified fear of self-incrimination. The Wilcox court pointed to Mason v. United States, 408 F.2d 903 (10th Cir.1969), to demonstrate that the right to refuse to testify based upon Fifth Amendment grounds depends upon whether statutory immunity has been granted.
"The grant of immunity under the federal statute to the witnesses in Mason is coextensive with the protection afforded under the Constitutional privilege itself, Counselman v. Hitchcock, supra [142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892)]; Brown v. Walker, 1896, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; Heike v. United States, 1913, 217 U.S. 423, 30 S.Ct. 539, 54 L.Ed. 821, as to both federal and state prosecutions. In Reina v. United States, 1960, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249. Since the granting of immunity is not a judicial function, but it is an executive or legislative power, United States v. Ford, 1878, 99 U.S. 594, 25 L.Ed. 399; Ullman v. United States, 1955, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, a grant of immunity under a federal statute, as was given to the witnesses in Mason, virtually decides for the Court whether to permit the invocation of the privilege. In fact, the decision whether the witness will testify or be permitted not to on grounds of self-incrimination is no longer under judicial auspices. The protection is complete, and unless the witness commits perjury while he testifies under *457 the protection of the statute or refuses to testify despite the immunity of the statute, so as to become contemptuous, he need fear no future prosecution for the matter he reveals." 450 F.2d at 1138, note 9.
We also find ourselves in possible conflict with a recent decision of the First District Court of Appeal in Saunders v. State, 319 So.2d 118, opinion filed May 9, 1975. On facts very similar to those sub judice that court held a witness was entitled to plead the Fifth Amendment in the trial of another defendant although the witness had previously been acquitted of the same charges and the state had offered the witness "immunity regarding the robbery or false imprisonment for which he was charged." That case might be distinguished on the basis of the above quoted limited offer of immunity. If on the other hand the state's offer of immunity was sufficient to completely immunize the witness under § 914.04, F.S. 1973, then we would disagree with the conclusion reached there.
Having concluded that appellant had no right to refuse to testify, we turn to the second contention of error, i.e., that concerning the summary nature of the adjudication of contempt. Appellant argues that not all direct criminal contempts can be adjudicated summarily; and that in cases of direct criminal contempt which do not constitute an open threat to the orderly procedure of the court the contemnor is entitled to notice of the charges, a hearing thereon, and an opportunity to defend against those charges. The foregoing argument is valid. However, it does not apply to the facts of this case because appellant's refusal to testify was an open threat to the orderly conduct of Hill's trial.
Appellant relies upon Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), as authority for his position that the court erred in punishing his contempt summarily. However in the recent case of United States v. Wilson, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), the Supreme Court clarified its Harris opinion and held that an act committed in the trial court's presence may be disruptive even though it is not violent. If it is disruptive, it may be dealt with summarily as a direct contempt under Rule 42 (a), Federal Rules of Criminal Procedure (much like our Rule 3.830 RCrP). The Court went on to hold that immunized witnesses' refusal to testify at trial, even though not delivered disrespectfully, constituted direct criminal contempts punishable summarily because such refusals were intentional obstructions of the orderly administration of justice. 95 S.Ct. at 1806.
In our view the circumstances of this case present a direct criminal contempt justifying the court in summarily adjudicating the contemnor. Rule 3.830, RCrP provides in part as follows: "A [direct] criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court." The refusals to answer the questions involved herein were all made in the presence of the trial judge and after extensive advices and warnings by the court.
We therefore conclude on authority of United States v. Wilson, that the trial court acted properly in dealing summarily with appellant's improper refusal to testify.
However, the court acted improperly in failing to follow the requirements set forth in Rule 3.830, RCrP.[1] *458 Manning v. State, Fla.App. 1970, 234 So.2d 16; Berman v. State, Fla.App. 1971, 253 So.2d 144; Speller v. State, Fla.App. 1974, 305 So.2d 231; Krathen v. State, Fla.App. 1975, 310 So.2d 381; cf. Miller v. State, Fla.App. 1975, 305 So.2d 826. Moreover, we hold that the trial court erred in finding appellant guilty of fifteen contempts rather than one. We are of the opinion that when a witness improperly refuses to answer a series of questions pertaining to the subject matter of an investigation or trial he commits but one contempt, not a series of them. As stated in Baker v. Eisenstadt, 456 F.2d 382 (1st Cir.1972):
"most courts have concluded that separate refusals to answer questions in the same proceeding, prior to punishment, particularly when the refusals are based on the privilege against self-incrimination, cannot be the subjects of multiple contempt penalties." 456 F.2d at 390.
Since this case must be remanded we make the following observation. The inclusion of the provision in the judgment and sentence under review that appellant "be imprisoned at Hard Labor" is improper because no existing Florida statute provides for imprisonment at hard labor as a sentence for any offense  including criminal contempt. See Speller v. State, supra; and cases cited at 24 C.J.S. Criminal Law § 1577d(1). Appellant's reliance on such cases as Ballengee v. State, Fla.App. 1962, 144 So.2d 68, and Thiede v. State, Fla.App. 1966, 189 So.2d 490, as authority for his position that a contemnor may not be sentenced to hard labor is misplaced. The reason underlying those decisions was the thesis that criminal contempt was not a crime  hence one guilty of criminal contempt was not a convict and could not be sentenced to hard labor. However, that thesis was overruled by Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), and Aaron v. State, Fla. 1973, 284 So.2d 673, which decisions held that criminal contempt is a crime. Since criminal contempt is a crime, one found guilty of that crime may be sentenced in the same manner as anyone else found guilty of a crime of the same magnitude.[2] But the mere inclusion of the provision relative to hard labor[3] in the judgment and sentence under review does not require reversal; that provision may be stricken as surplusage. See Rodgers v. State, Okl.Cr. 1973, 510 P.2d 992, 994, and other cases cited at 24 C.J.S. Criminal Law § 1577d(1), p. 536, note 35.
However, we reverse the judgment and sentence because the trial court erred prejudially in failing to follow the procedure set forth in Rule 3.830, RCrP, and in adjudicating appellant guilty of fifteen contempts rather than just one, and we remand the cause for further proceedings in accordance with this opinion.
Reversed and remanded.
WALDEN, C.J., and MAGER, J., concur.
NOTES
[1] The trial court failed to comply with the following provisions of Rule 3.830:

"The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances."
[2] Aaron v. State, Fla. 1973, 284 So.2d 673, sets forth the magnitude of the crime of criminal contempt and the appropriate punishment therefor at page 676 of the opinion.
[3] Hard labor may properly be part of the penitentiary system even though no statute provides for hard labor as punishment for a crime. 24 C.J.S. Criminal Law § 1577, p. 537.