449 So.2d 1315 (1984)
Richard P. HOPE, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2491.
Court of Appeal of Florida, Second District.
April 11, 1984.
Rehearing Denied May 15, 1984.
*1316 Joel Hirschhorn of Joel Hirschhorn, P.A., Miami, for appellant.
Jim Smith, Atty. Gen., Tallahassee, Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant, Richard P. Hope, appeals his conviction and sentence for indirect criminal contempt under Florida Rule of Criminal Procedure 3.840. We affirm.
Appellant raises two points for our consideration:
I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR RECUSAL OF TRIAL JUDGE.
II. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUSTAIN THE TRIAL COURT'S FINDING THAT APPELLANT POSSESSED THE CRIMINAL INTENT NECESSARY TO SUPPORT A FINDING OF GUILT AS TO THE OFFENSE OF INDIRECT CRIMINAL CONTEMPT.
The proceedings below began as a result of instanter subpoena served on appellant in Tampa early in the afternoon of September 7, 1983. That subpoena required appellant to appear forthwith before the Hillsborough County Grand Jury that was then in session. Appellant was taken to the grand jury by the law enforcement officers who served the subpoena. Appellant's request to contact his previously retained attorney in Miami was refused prior to his appearance before the grand jury. On being questioned before the grand jury, appellant asserted his Fifth Amendment privilege against self-incrimination. Appellant then was specifically extended the immunity afforded by section 914.04, Florida Statutes (1983), and was excused from the grand jury room in order to contact his attorney. His attorney was unavailable and appellant talked briefly to another attorney who declined to advise appellant. Appellant was returned to the grand jury room where he continued to assert a Fifth Amendment privilege. Appellant was then excused from the grand jury to await the arrival of the circuit judge from Polk County who had been specially assigned to advise the Hillsborough County Grand Jury in the matters pending before it. During this interval, which by now was late in the afternoon of September 7, 1983, appellant was able to briefly talk by telephone with his attorney in Miami. However, because his attorney was about to leave his office to attend a religious celebration, the attorney informed appellant he was not in a position to render him legal advice. A continuance of the grand jury proceedings was refused. The assigned judge, upon his arrival, was advised of the status of the proceedings. The trial judge spoke by telephone with an attorney associate of appellant's Miami attorney, who advised the judge that appellant's attorney was unavailable then and would continue to be unavailable the following day due to religious observances. The trial judge advised appellant that due to his grant of immunity, he had no alternative but to either testify or be held in contempt. Appellant continued to refuse and the matters were recessed and appellant was orally cited for contempt by the trial judge and held in jail pending a hearing on the contempt citation.
Subsequently, a hearing was held on September 9, 1983, at which time appellant was adjudged guilty of civil contempt. Appellant was not represented on September 9, 1983, although his family had been in touch with his attorneys in Miami who informed *1317 them that they could not be present at the hearing. Appellant advised the court that he was not indigent, could afford to and had retained his own attorneys, but even though they could not be present, he did not desire to consult anyone else. The trial judge again informed appellant that he had been granted immunity and had no basis for his expressed fears that he might be prosecuted as a result of his testimony.
A further hearing was held on September 13, 1983, and appellant was represented by counsel. At that time, the trial judge signed the civil contempt order and an order to show cause why appellant should not be found guilty of indirect criminal contempt. A hearing was held on the order to show cause on October 14, 1983, and appellant was represented by counsel. Appellant was found guilty of indirect criminal contempt. A sentencing hearing was held on December 2, 1983, at which time appellant was sentenced to five months and twenty-nine days. This appeal followed.
Although his motion for recusal does not specify, it appears from the affidavits and argument in support thereof, that it was filed pursuant to Florida Rule of Criminal Procedure 3.230, rather than Florida Rule of Criminal Procedure 3.840(a)(5). In addition, there is nothing in the nature of the alleged contempt that would indicate there was any disrespect to or criticism of the trial judge involved so as to actuate Rule 3.840(a)(5). Pertinent to appellant's argument on his motion to recuse is the fact that the trial judge had, prior to the hearing on the order to show cause on the indirect criminal contempt, adjudged appellant guilty of civil contempt for the same acts as were the subject of the indirect criminal contempt. Appellant argues that the trial judge was prejudiced against him because he had prejudged the facts constituting both the civil contempt and the indirect criminal contempt. Accepting, as we must, the facts of the motion for recusal and supporting affidavits as true, they are not legally or reasonably sufficient to support a well grounded fear in appellant that he would not receive a fair trial at the hands of the trial judge. State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695 (1938); Dickenson v. Parks, 104 Fla. 577, 140 So. 459 (1932). In addition to the motion and supporting affidavits, we have examined all of the transcripts of the various proceedings before the trial judge below and find not one scintilla of evidence that would justify a reasonable fear in appellant of not receiving a fair trial before that trial judge. If such were the case, no trial judge could ever adjudicate a contemnor to be guilty of civil contempt and then, after complying with necessary due process procedures, preside over indirect or direct contempt proceedings involving the same conduct. Appellant also argues that the trial judge should have recused himself because he would be a necessary witness inasmuch as appellant's refusal to testify was repeated and affirmed before the trial judge. That argument must fail for much the same reason as the argument addressing the alleged prejudice of the trial judge. In any case of direct or indirect criminal contempt where the acts took place before the trial judge, the argument could be made that because the trial judge witnessed the act he should be disqualified. However, that circumstance alone is not sufficient to require disqualification of the judge. Byrant v. State, 363 So.2d 1141 (Fla. 1st DCA 1978). In this case, appellant, by his answer to the order to show cause, has admitted his refusal to testify before the grand jury. Having admitted the act upon which his contempt was based, his defense was premised on his allegations that the act was not intended to be contemptuous as he argues in regard to the second point he raises before us.
Appellant's second point is actually based on two arguments. First, he argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt because his refusal to testify was due to his alleged inability to adequately consult with his private counsel. Appellant argues that since that was his constitutional right, his refusal to testify, based upon that right, reflects a lack of intent to be *1318 contemptuous. First of all, a witness, as opposed to an accused, in a judicial proceeding has no constitutional right to counsel unless the witness' Fifth Amendment rights are in jeopardy. Even then, the right to counsel has certain restrictions which we have no need here to examine. In this case, appellant was granted the complete immunity available to a witness under section 914.04, Florida Statutes (1983). That statutory immunity has been construed to be coextensive with the scope of the Fifth Amendment privilege. State v. McSwain, 440 So.2d 502 (Fla. 2d DCA 1983). As the trial judge carefully explained to appellant several times, once that statutory immunity was granted, appellant had only the choice between testifying or being in contempt for failure to so testify. McDonald v. State, 321 So.2d 453 (Fla. 4th DCA 1975). Even though, in this case, appellant invoked his Fifth Amendment privilege and was consequently specifically granted immunity, our supreme court has recently held in Jenny v. State, 447 So.2d 1351 (Fla. 1984) that section 914.04 is self-executing, and a witness under subpoena to testify need not invoke Fifth Amendment rights in order to acquire the immunity granted by the statute. While we see some severe potential problems in the implementation of Jenny,[1] there no longer seems to be any question that a witness who testifies as a result of a subpoena to appear before a grand jury is automatically granted statutory immunity and has no need or right to counsel. Even so, after receiving the subpoena and appearing before the grand jury on September 7, 1983, appellant was allowed to exit the grand jury room and call his private counsel in Miami. Though they were able to talk only briefly because his counsel was beginning the celebration of a religious holiday, a brief conversation would have been sufficient to confirm the trial judge's admonition that he had but the choice to testify under statutory immunity or be in contempt. Nevertheless, the proceedings were recessed for two days, until September 9, 1983, during which time appellant had further opportunity to confer with an attorney, albeit his previously retained attorney was still involved in a religious celebration. The matter was then recessed for another four days, until September 13, 1983, when a further hearing was held during which appellant was represented by counsel. At each of those three appearances before the trial judge, appellant refused to answer questions before the grand jury.
As a result of the September 13, 1983 hearing, the order to show cause why appellant should not be held in indirect criminal contempt was issued and the hearing held thereon on October 14, 1983. Appellant was represented by counsel at that hearing and found guilty of indirect criminal contempt. Sentencing was continued until December 2, 1983. At each appearance before the trial judge, the judge continued to offer not to find appellant guilty and not to sentence him for indirect criminal contempt if he would testify, but in each instance appellant continued to refuse.
Appellant's argument that though he refused to testify he lacked contemptuous intent, is belied by his continuous and repeated refusal to testify after being repeatedly warned of the consequences of his conduct and after being afforded more than ample due process for the protection of his rights. As the court stated in Wilson v. Joughin, 105 Fla. 345, 141 So. 178, 179, 181 (1932):
It may be that even now, if the sole question were the intent of an ambiguous act, the proposition would apply. But in this case it is a question of personal *1319 presence and overt acts. If the presence and the acts should be proved there would be little room for the disavowal of intent.
See Croft v. Culbreath, 150 Fla. 60, 6 So.2d 638, 639 (1942).
Appellant also argues, in support of his point II, that he had a good faith belief that the instanter subpoena and the method in which it was served was unlawful. We find no merit in that argument. "The power of the grand jury to summon or bring persons before it for the purpose of hearing testimony on matters under investigation admits of no doubt, although the exercise of this power is discretionary." 33 Fla.Jur.2d Juries § 141 p. 534, 535.
On oral argument, appellant urged that the evidence did not support his conviction because the assistant state attorney who conducted the grand jury interrogation and the hearing on the order to show cause was not sworn to testify concerning the facts of appellant's refusal to testify. As we have previously observed, appellant admitted his refusal to testify in his answer. He also, in the presence of the trial judge, repeatedly refused to testify. Thus, while the contemptuous acts were tried as indirect criminal contempt under the theory of Pendley v. State, 392 So.2d 321 (Fla. 1st DCA 1981), the acts were in fact committed in the presence of the trial judge. Baumgartner v. Joughin, 107 Fla. 858, 143 So. 436 (1932); Starchk v. Wittenberg, 411 So.2d 1000 (Fla. 1st DCA 1982); Aiello v. State, 338 So.2d 1101 (Fla. 4th DCA 1976); McDonald at 457. While the assistant state attorney "assured" the trial judge at his specific request that the matters he recited in support of the order to show cause "actually transpired," such recitation was merely superfluous in light of appellant's admission of the acts which occurred in the presence of the trial judge.
We therefore affirm appellant's conviction and sentence.
GRIMES, A.C.J., and LEHAN, J., concur.
NOTES
[1] While this court in State v. Schell, 222 So.2d 757 (Fla. 2d DCA 1969) construed the immunity granted by the predecessor statute to section 914.04 to be limited to state compelled witnesses' testimony, section 914.04 is not limited to testimony compelled as a result of investigative or grand jury subpoenas. It is therefore possible, under Jenny, for a state subpoenaed trial witness, as well as a witness subpoenaed by a state attorney or a grand jury for investigative purposes, to be inadvertently granted immunity in regard to testimony produced as a result of that subpoena.